No. 2314

Second Circuit

WALKER v. BREMMER

(December 10, 1925, Opinion and Decree.)
(March 11, 1926, Rehearing Refused.)
(April 10, 1926, Opinion and Decree of Rehearing.)
(May 4, 1926, Certiorari Refused.)

*(Syllabus by the Editor.)*

1. **Louisiana   Digest—Pleading—Par.   11, 110.**

One who sequesters the property of another as the other's property thereby admits the ownership of it.

2. **Louisiana, Digest—Sequestration—Par. 24, 25, 28, 34, 35.**

One cannot be permitted to take advantage of his unlawful act. Therefore, where one sequesters property, has it delivered to him on a release bond and then voluntarily dismisses his suit, the seizure of the property is illegal, he cannot, by this illegal seizure, deprive the defendant of his right to the value of the property when it was seized.

3. **Louisiana  Digest—Sequestration—Par. 34, 35.**

The value of property that plaintiff (in a sequestration suit) who has obtained possession of the seized property under a release bond and sold it is liable for, in case the writ was illegally issued, is the value of the property at the time it was seized and not its value at the time of the decision of the court.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. T. F. Bell, Judge.

Action by B. F. Walker against C. M. Bremmer, et al., to recover the value of lumber seized by defendant in an illegal sequestration suit, released under bond, and sold by the defendant.

There was judgment for plaintiff and defendant appealed.

Judgment amended and affirmed.

A. P. Garland, of Shreveport, attorney for plaintiff, appellee.

Cook & Cook, of Shreveport, attorneys for defendants, appellants.

## STATEMENT OF THE CASE

REYNOLDS, J. On June 10, 1920, Bodcaw Valley Lumber Company, a commercial partnership composed of C. M. Brenner, Lee Deck and Ernest Deck, procured a writ of sequestration in Suit No. 27,360 on the docket of the First Judicial District Court of Louisiana, Parish of Caddo, entitled Bodcaw Lumber Company vs. B. F. Walker, under which 39,000 feet of lumber, more or less, was seized.

More than ten days after the seizure the defendant in that suit, not having bonded the lumber, the plaintiff therein, Bodcaw Valley Lumber Company, on July 14, 1920, bonded it, giving the United States Fidelity & Guaranty Company of Maryland as surety on its forthcoming bond.

The Bodcaw Valley Lumber Company sold the lumber shortly after so obtaining possession of it.

Suit No. 27,360 remained pending on the docket of the First Judicial District Court of Louisiana, Parish of Caddo, until October 31, 1922, when it was dismissed as in case of non-suit on motion of counsel for plaintiff therein.

On January 10, 1923, this suit was filed, asking for $1760.00 as damages for the wrongful conversion of plaintiff's said lumber by the defendants in this suit, plaintiffs in that.

The plaintiff reduced the amount claimed by him from $1760.00 to $1560.00, and the amount now involved in the suit is only $1560.00.

Defendants denied liability.

The case was called for trial in March, 1923, and 320 pages of testimony was taken.

After argument by counsel for both plaintiff and defendants, the case was dismissed as of non-suit on March 8, 1924.

On March 12, 1924, the court, on its own motion, ordered a new trial, and thereupon 65 pages of additional testimony was taken.

The court then gave judgment against all of the defendants for $413.21, and against C. M. Brenner, Lee Deck and Ernest Deck for the additional sum of $348.77.

The defendants appealed, but only C. M. Brenner and United States Fidelity

& Guaranty Company of Maryland perfected their appeal.

It this court the plaintiff has answered the appeal and asked that the judgment be amended so as to allow the full amount claimed.

## OPINION

The first question to be decided is whether or not the plaintiff was the owner of the 39,000 feet of lumber, more or less, sequestered.

As to approximately 15,000 feet of the lumber in the stack at or near the mill, there is no question, for it was sequestered as the property of B. F. Walker, the plaintiff, and having sequestered it as his property the defendants thereby admitted his ownership of it.

As to the remaining 24,000 feet, more or less, seized in Bounds' Pasture, the following evidence is relevant.

The contract between plaintiff and Bodcaw Valley Lumber Company provides:

"In consideration of the above services the Bodcaw Valley Lbr. Co., or Lee Deck, agrees to pay B. F. Walker's expenses or board while at work at the mill and furnish him (500) five hundred feet of lumber per day F.P.B. Cotton Valley, La., the lumber to be of the kind and quality selected and manufactured by B. F. Walker during the 60 days, or the amount of lumber earned by B. F. Walker during the 60 days is to be furnished within that time, and may be either pine or hardwood, either rough or dressed, timbers or lumber of the grades required by B. F. Walker at his option."

B. F. Walker testified, pages 56 and 57:

"Q. Was any of the lumber delivered to you and removed by you from the mill site of the Bodcaw Valley Lumber Company during the sixty days you testified about?

"A. Yes, a little more than twenty-eight thousand feet.

"Q. Where did you move it to?

"A. About a quarter of a mile away from the mill yard and stacked it in Mr. Bounds' pasture near his house."

Lee Deck testified, pp. 40-45:

"Q. Was there not about twenty-four thousand feet of lumber manufactured from logs bought by the Bodcaw Valley Lumber Company and delivered to Mr. Walker by you?

"A. Well, he hauled away from the mill somewhere around twenty or twenty-four thousand feet.

\* \* \* \*

"Q. Now what was to be paid for services in repairing the mill?

"A. He was to be paid at the rate of five hundred feet of lumber per day out of the lumber that he cut for repairing the mill.

\* \* \* \*

"Q. You agreed on that contract?

"A. Well, he come there and was to fix up the mill and was to get this lumber.

\* \* \* \*

"Q. Well, Mr. Walker went to work and repaired that mill under the contract to that effect?

"A. Yes, sir.

\* \* \* \*

"Q. Now, Mr. Walker was in possession of twenty-four thousand feet of lumber in the Bounds pasture?

"A. Yes, sir, and it was away from the mill."

W. J. Bounds testified, pp. 87-88.

"Q. Were you around the mill at any time while Mr. Walker was moving this lumber to your pasture?

"A. Yes, I was working there then.

"Q. Was Mr. Lee Deck there?

"A. Yes, sir.

"Q. Was Mr. Ernest Deck there?

"A. Yes, sir.

"Q. They were there while Mr. Walker was moving this lumber?

"A. Yes, they were there.

"Q. Did you hear them make any complaint about his moving this lumber out?

"A. No, sir, never heard any complaint.

\* \* \* \*

"Q. They were there all the time he was moving it?

"A. Yes, sir, the first part of it they stacked out on the end of the tram and the other of it just pushed off the end of the mill shed.

"Q. Know who it was pushed for?

"A. Mr. Walker. I saw Mr. Ernest Deck helping him load some of it on my wagon. He had one of my wagons and hauled it from the mill up to the pasture."

From this testimony we are convinced that the lumber sequestered in Bounds' pasture had been delivered to B. F. Walker and was his property.

The next question to be decided is as to the value of the lumber sequestered, and as to whether plaintiff is entitled to recover its value as of the date it was bonded and sold by defendants or as of the date of the filing of this suit.

Law is common sense and justice applied to human affairs between man and man. It would be unfair to hold that the defendants in this case, plaintiffs in Suit No. 27,360, could take possession of plaintiff's lumber in 1920 and sell it when it was worth from forty to fifty dollars per thousand feet and hold their suit in court until October, 1923, when the price of lumber had declined fifty per cent or more and then discharge their obligation for damages to plaintiff by simply paying the value of the lumber as of the date that plaintiffs in Suit No. 27,360 dismissed their suit as in case of non-suit in October, 1923.

It would be permitting the defendants to take advantage of their own wrongful act in sequestering the property of the plaintiff in this suit.

Plaintiff in this case is entitled to recover damages based on the value of the lumber at the time it was bonded and sold by Bodcaw Valley Lumber Company.

We held in Overland-Texarkana Co. vs. Bickley, 1 La. App. 699, that the use of another's property against his will was a wrongful use of the property. Under that authority and the authorities therein cited plaintiff in this case is entitled to judgment for the value of the lumber taken and sold by defendants.

Defendants insist with earnestness that we pass upon the question of the district judge's right to grant a new trial in this case on his own motion after he had dismissed the case as of non-suit.

If we should sustain defendants' contention and hold that the district judge wrongfully ordered a new trial, it would avail defendants nothing, for we find ample evidence introduced on the first hearing to warrant a decision in this

case; and, having found that the plaintiff is entitled to recover damages based on the value of the lumber as of the date of the bonding and sale of the same by defendants, it is unnecessary for us to pass upon this question.

Defendant insists that of the 39,000 feet of lumber, more or less, bonded by them, only 22,000 feet had legally been seized.

The lumber was seized and turned over to W. J. Bounds as keeper, and he testified, page 89:

"Q. Now, Mr. Bounds, do you remember the suit by the Bodcaw Valley Lumber Company against Mr. Walker in the parish of Caddo claiming the ownership of this lumber?

"A. Yes, I remember the time Mr. Edwards came up there and attached the lumber. I wasn't at home. I was at Rocky Mount, and I met Mr. Edwards as he was coming from there.

"Q. That was in July, 1920.

"A. Fifth of June it was.

"Q. Fifth of June?

"A. Yes, sir.

"Q. Were you appointed custodian of that lumber?

"A. Yes, sir.

"Q. By whom?

"A. By Mr. Edwards.

"Q. Did you take possession of it?

"A. Yes, sir.

"Q. What lumber did you take possession of?

"A. Well, I took possession of all of it. He told me the Walker lumber.

"Q. You took possession of the lumber in your pasture? And the fifteen thousand feet more or less down about the mill site?

"A. Yes, sir.

"Q. Did you hold possession of that lumber?

"A. Yes, sir.

* * * *

"Q. Did you surrender this lumber—afterwards surrender this lumber to Bodcaw Valley Lumber Company?

"A. Yes, sir, Mr. Edwards wrote me to release the lumber to the Bodcaw Valley Lumber Company. I have the release in my pocket if you want to look at it.

"Q. Did you release it?

"A. Yes, sir.

"Q. What did they do with it?

"A. Well, they carried it over to Cotton Valley and shipped it, I guess. I never seen them shipping it, but they carried it off over there.

"Q. Then you held possession of this lumber as custodian?

"A. Yes, sir, all through.

"Q. Until the delivery of it to the Bodcaw Valley Lumber Company?

"A. Yes, sir."

From this testimony we think the lumber in both stacks was actually legally seized; but in any event the defendant here was the plaintiff in the suit in which it was seized, and it cannot be allowed to take advantage of any laches in taking physical possession of the lumber seized after it has bonded and sold the same.

Plaintiff insists that under these conditions defendant is estopped from denying that it bonded and seized and sold 39,000 feet of his lumber in the summer of 1920.

Defendant contends that it is not estopped for the reason that it did not do or say anything that caused plaintiff to change his position to his detriment.

The answer to defendant's contention is that, under the writ of sequestration in 1920, which it then claimed was meritori-

ous, but which they now admit, by the taking of a voluntary non suit, is without protective force to it, changed the position of plaintiff from that of owner in possession to that of owner out of possession, and by virtue of its possession it sold all of plaintiff's lumber that was in both stacks.

We therefore think plaintiff's plea of estoppel is sound.

The lumber bonded by defendant was 39,000 feet, more or less, and had been selected by plaintiff as lumber suitable for building derricks. The evidence of W. A. McKinnen, a man known to the court to be of high integrity, gives (Evidence, page 20,) prices of lumber prevailing about the date of the bonding of the lumber in question at from $56.25 to $32.25 per thousand, or, to be exact, he gives the price of four sales as follows: $56.25 per thousand, $47.25 per thousand, $49.25 per thousand, and $32.25 per thousand; making a price of $43.75 per thousand, based on a general average.

From all of the evidence in the case touching the value of plaintiff's lumber at the time it was bonded, we think $40.00 per thousand has been established as its value, and that $40.00 per thousand for 39,000 feet of lumber claimed by plaintiff and bonded and sold by defendant plaintiff is entitled to judgment for, or $1560.00, the amount sued for.

For the above reasons it is ordered, adjudged and decreed that the judgment appealed from be amended as to C. M. Brenner and United States Fidelity & Guaranty Company of Maryland, and it is now ordered, adjudged and decreed that plaintiff, B. F. Walker, do have judg-ment against C. M. Brenner and United States Fidelity & Guaranty Company of Maryland in solido for the sum of fifteen hundred and sixty dollars with five per cent per annum interest thereon from the date of this decree and all costs of suit. The defendants, Lee Deck and Ernest Deck, not having appealed from the judgment of the lower court the same as to them remains in full force and effect. And as thus amended the judgment of the lower court is affirmed.

———

## ON APPLICATION FOR REHEARING

ODOM, J. We have given most careful consideration to the brief filed by defendants in support of their application for rehearing and have examined all the authorities cited.

We cannot concede counsel's point in this case.

On June 10, 1920, the defendant, Bodcaw Valley Lumber Company, sued the plaintiff and procured the issuance of a writ of sequestration and had sequestered a certain amount of lumber which plaintiff claimed.

Plaintiff in this case, defendant in that suit, having failed to bond the seizure within ten days, the defendant Bodcaw Valley Lumber Company, plaintiff in that suit, had the sequestered property released to it on a forthcoming bond. It sold the property and appropriated the proceeds. More than two years later it voluntarily dismissed its suit.

Subsequent to the dismissal of the suit plaintiff brought this suit against the de-

fendant and its surety on the release bond to recover the value of his property thus taken possession of and converted.

Defendant Bodcaw Valley Lumber Company admitted, in answer, that it had sold the lumber of which it got possession, but it made no effort to return said lumber to plaintiff or a like quantity and quality and value.

Counsel for defendants concede that plaintiff is within his rights in suing on the release bond; but, as we understand their contention, it is that the amount of recovery should be based upon the value of the property, not at the time it was thus obtained and converted, but upon its value at the termination of the litigation, it being shown that the price of lumber materially declined between the date on which it was seized in 1920 and the date on which the suit was tried. They cite many decisions of the Supreme Court. We have carefully read all of them and, in our opinion, not one of them supports their contention.

The leading case cited, on which they apparently rely and which has been followed in many other decisions cited by counsel, is that of Baker, et al., vs. Morrison, et al., 4 La. Ann. 372.

In that case the property sequestered was released to the defendant on a forthcoming bond. The plaintiff in that case obtained judgment against the defendant for a certain amount. A writ of fi fa was issued and the return on the writ showed no property found.

Plaintiff then brought suit against the sureties on the bond, claiming judgment against them for the amount of the judgment against the original defendant, and there was judgment accordingly. The bond in that case authorized such a decree, but the court held that the provision in the bond providing for such a decree went beyond the law and that the bond must be construed according to the law under which it was given. And the court said:

"The 279th article of the Code of Practice, which grants the right of bonding sequestered property, contemplates a security equivalent to the value of the goods released. Article 280 declares that the surety shall be responsible that the defendant shall not send the movables or slaves out of the jurisdiction of the court; that he shall not make improper use of them, and that he will faithfully present them after the definitive judgment, etc."

And the court further said:

"The injury sustained by plaintiff is the value of the sequestered property which, if it had been presented, would have been applied to plaintiff's claim. A judgment resting upon the mere standard of the amount of plaintiff's claim without reference to the value of the property sequestered is therefore erroneous. As we have no evidence of the value of the property, the suit must be dismissed."

In the case of Jacobson vs. Saville, 6 La. Ann. 277, cited by counsel, it was held that where a plaintiff sequestered goods and carried his suit to final judgment and then seized and sold the goods sequestered under a fi. fa. the sureties on the bond were released.

The case of Francis vs. Martin, 28 La. Ann. 410, cited by counsel, follows the Baker case to the effect that the injury sustained by plaintiff is the value of the sequestered property.

In the case of Carroll & Co. vs. Hamilton, 30 La. Ann. 523, the court held that the sureties on a release bond cannot be held for more than the value of the property released from sequestration, regardless of the amount of the judgment.

In the case of Schmidt & Zeigler vs. Brown, 33 La. Ann. 418, in speaking of the penalty of such a bond, the court said:

"Under the jurisprudence as settled it is that in default of delivery the sureties are bound not for the value of the property but for the amount of the judgment, provided it does not exceed the value of the property."

It is not held in any of the cited cases that the value of the property at the termination of the litigation is the measure of the damage, nor have we been able to find any which has so held.

In the instant case, the equities are all with the plaintiff. His property was seized and taken from him in 1920 when the price of lumber was high. Defendant Bodcaw Lumber Company got the benefit of the high price and now proposes to settle with plaintiff with a greatly reduced value. The fact that after having the property sequestered and finally delivered to it on a release bond it voluntarily dismissed its suit, indicates that the seizure of the property was illegal. It therefore got illegal possession of plaintiff's property and converted it. It cannot be permitted to take advantage of its unlawful act to its own advantage and to the detriment of plaintiff.

As above stated, defendant, Bodcaw Lumber Company, admits that it got possession of the property and sold it, and it does not propose to return the property. In fact, it could not do so, as the property has already been disposed of.

Inasmuch as it cannot restore the property and inasmuch as the measure of damages is the value of the property obtained, it must respond for the value of the property on the date on which it was taken.

On the questions of fact presented, as to the amount and value of the lumber seized, we think our former judgment is correct.

Rehearing refused.